# Affidavit

* * * * * * * *

Jesse A. Armstrong, a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), United States Department of Justice, being duly sworn, depose and state as follows:

## I.  INTRODUCTION AND AGENT(S) BACKGROUND

1. I am a Detective with the Kentucky State Police and have been employed since January 4, 2009. I have been assigned to the Bureau of Alcohol, Tobacco, Firearms, and Explosives since June 2019, and was officially sworn in as a Task Force Officer ("TFO") on the Southeast Kentucky Violent Crimes Task Force on June 22, 2021. Before such employment, I received a Bachelor's of Science degree in Criminal Justice at Eastern Kentucky University. I was also a patrol officer with Bessemer Police Department in Bessemer, Alabama for 3 years. I completed a 12-week basic police course and hundreds of hours of training during my time there. This training included basic police investigations and drug investigations. During my employment with the Kentucky State Police, I completed a 23-week basic police academy, receiving training in basic police investigations, as well as drug investigations. February 1, 2014, I was assigned a general detective position with KSP Post 7. I have completed hundreds of hours of training in investigations, crime scene investigation, interview and interrogation, online and social media investigations, officer involved shooting investigations, white collar crime investigations, and narcotics investigations.

2. On June 1, 2019, I was assigned to KSP Drug Enforcement/Special Investigations. Since that time, I have worked closely with the Bureau of Alcohol, Tobacco, Firearms, and Explosives to cultivate cases for federal prosecution. As a Kentucky State Police Trooper and Detective, I have completed numerous state investigations involving theft, fraud,

1

assault, kidnapping, murder, sexual crimes against adults, sexual crimes against children, and illegal narcotics possession and trafficking. I have also investigated drug trafficking/cultivating, murder, kidnapping, illegal possession of explosives, and drug trafficking cases on the federal level.

3. As a result of my training and experience, I am familiar with Federal criminal laws and know that it is a violation of:

   a) Title 21 U.S.C. § 846 to conspire with another to distribute over 500 grams of a mixture or substance containing a detectable amount of methamphetamine, a schedule II-controlled substance, and to conspire to distribute 40 grams or more of fentanyl

4. Your affiant has participated in this investigation, and has interviewed informants in this case, as well as witnessed some of the activities outlined in this affidavit. The following contains information necessary to support probable cause and does not include every detail of the investigation.

5. Kentucky State Police developed a confidential informant (KSP CI 24-3138, hereinafter referred to as CI1) who had been purchasing large amounts of methamphetamine and fentanyl from Ryan Toney, a.k.a. "Yellow", from Dayton, Ohio and distributing those drugs in the Laurel County area of the Eastern District of Kentucky. CI1 said his former source of supply was Marsailles Wade, but Wade had gotten arrested and was currently incarcerated. CI1 said Toney had delivered methamphetamine and fentanyl to him on behalf of Wade before Wade was arrested, but that the CI was now contacting Toney directly for drug purchases.

6. CI1 also indicated that Wade had notified him that he was going to jail and that a male nicknamed "Chablingy" was going to be taking over Wade's drug trafficking operation. CI1 showed me a Facebook photograph of the person that he knew to be

2

"Chablingy," and using facial recognition software I was able to confirm "Chablingy" to be Herman Lee Buchanan, Jr. from Dayton, Ohio. I have compared the Facebook photograph of "Chablingy" that was shown to me by the informant to a jail booking photograph and driver's license photograph of Herman Lee Buchanan, Jr. and confirmed that they depict the same person. CI said Buchanan had traveled to Richmond, KY to deliver at least one pound of methamphetamine to the CI before Wade went to jail.

7. On March 19, 2024, CI1 used KSP photocopied buy money to repay a $2,000 debt from the drugs seized by police during a search warrant on the CI's residence. Ryan Toney was identified as the CI's source of supply for methamphetamine and the one to arrive to accept the debt money. Toney promised CI1 to bring 2 pounds of methamphetamine the following day. On March 20, 2024, Toney informed CI1 that he had just received the package around 2300hrs and would not come to deliver to him until the following day. On March 21, 2024, Toney arrived at the CI's garage in Laurel County, Kentucky and delivered approximately 457 grams of suspected methamphetamine for $1600. The buy was recorded and clearly shows Toney as the one who accepted payment and delivered the substance.

8. On March 15, 2024, CI 24-3138 completed a controlled purchase of approximately 93 grams of suspected fentanyl from Ryan Toney. Toney delivered the suspected fentanyl to the same location and was clearly seen on video surveillance doing so. Toney informed the CI that he did not have enough money to purchase a large amount of methamphetamine but could get large amounts of fentanyl "fronted" to him without paying for it until later. CI1 said that Toney was connected to Buchanan and that Buchanan was Toney's source of fentanyl.

9. On April 16, 2024, CI 24-3138 completed a controlled purchase of approximately 454 grams of suspected methamphetamine from Ryan Toney. Toney delivered the suspected methamphetamine to the same location and is clearly seen on video surveillance.

10. On April 22, 2024, CI1 set up a controlled purchase of 8 ounces of fentanyl. A GPS tracking device had previously been placed on Toney's vehicle and detectives knew his location. Toney was seen on I-75 southbound, in route to the CI's location. Kentucky State Police drug interdiction units developed probable cause to traffic stop the vehicle in Rockcastle County. During a probable cause search, Troopers located suspected illegal narcotics packaged and pressed inside a jacket pocket. The jacket was located in the backseat and had paperwork in the pocket listed with Toney's name on it. The substance was identified as a fentanyl/heroin/methamphetamine mixture utilizing the TruNarc system. The amount of suspected drugs was weighed to be 254 grams.

11. Toney agreed to a post-*Miranda* interview at the Mt. Vernon, KY police department. Toney said he was headed to London, KY. He began saying that he did not know the fentanyl was in his vehicle. He indicated that he was going to the CI's shop on North Laurel Road. Toney admitted to smoking marijuana. Toney said the CI was likely calling him to see where he was. The CI had indeed called and was listed on Toney's phone under the CI's real name. The phone number was the CI's as well.

12. Toney showed detectives the history in his Waze mapping application on his phone in order to show the address the CI lived at. It, indeed, said the CI's address. Toney later said he was delivering the fentanyl to the CI tonight. He also said that he had come to Kentucky a few months ago delivering for Marsailles, delivering to the CI.

4

13. Toney mentioned the name "Chablingy" in his interview. Toney said "Chablingy" got mad at him when he realized he had been to see the CI because the CI owed him money. Toney said "Chablingy" was supplying the CI. He said Marsailles and "Chablingy" are cousins. Toney admitted that he got the fentanyl in his car that night from "Chablingy". Toney indicated that he had brought fentanyl to the CI from "Chablingy" before as well.

14. On April 23, 2024, CI1 received a text message from the target phone number of 937-260-7650 reading, "My dude got knock in that Range Rover he tryna say he was coming to u". CI1 confirmed that the CI had facetimed the person who owned this phone number and that it was Herman Lee Buchanan, Jr., a.k.a. "Chablingy" as identified through the facetime conversation. Toney delivered the drugs in his Range Rover, and the message was confirming that Toney was Buchanan's delivery driver.

15. CI1 informed detectives that he had spoken to Buchanan a few times since Toney was arrested and that Buchanan indicated that it was a random traffic stop and none of them were at risk of getting in trouble with him. Buchanan indicated to CI1 that he wanted to continue to deal with the CI. Buchanan was using the phone number of 937-260-7650 during each of these conversations. CI1 also showed detectives his text message history with that phone number, and it was drug related based on the representations of the CI and my training and experience.

16. Using Buchanan's phone number of 937-260-7650, CI1 set up an evidence purchase of 2 pounds of methamphetamine for May 2, 2024. Buchanan notified the CI that he would be sending a female to deliver the methamphetamine. CI1 indicated he had received deliveries from the female in the past and Buchanan told him it would be the

5

same female.

17. Buchanan used the phone number of 931-260-7650 during the entire evidence purchase to communicate to the CI the whereabouts of the delivery and an approximate time she would arrive. The female arrived at the buy location at 909 KY770 in Laurel County, KY in the Eastern District of Kentucky approximately at 1817hrs. The female, identified as Tyleah Davis, was driving a navy Chevrolet Malibu registered in her name through Ohio. Davis got into the truck with CI1 and handed the CI two gray socks full of suspected methamphetamine. The CI handed Davis the buy money and she left. In my training and experience, the substance in the socks is consistent with methamphetamine and weighed approximately 912 grams.

18. CI1 used the phone number of 937-260-7650 to contact Buchanan and inform him the weight was correct and the purchase was completed. CI1 used the same number to contact Buchanan again on May 4, 2024, about upcoming evidence purchases. During that conversation, Buchanan advised the CI that, in the event of a transaction occurring on the weekend (that is, this past weekend), it would not be able to occur until later in the day because Buchanan would be in Louisville during a portion of the weekend.

19. On May 6, 2024, Buchanan used the same phone number to orchestrate a purchase of 2 pounds of methamphetamine. During the conversation with the CI on May 6, 2024, Buchanan indicated he was also going to send 4 ounces of fentanyl. The CI told Buchanan they did not want the fentanyl and could not pay for it. The CI left the conversation telling Buchanan not to sent the fentanyl, but was unsure if he was going to comply with the request or not.

20. On May 7, 2024, Buchanan used the phone number to notify the CI that Davis

was on the way with the drugs. Buchanan communicated with the CI through the phone during the delivery, notifying the CI when Davis was approximately one hour away. Davis arrived at exit 49 off I-75 in Laurel County and pulled beside the CI vehicle. The vehicle Davis drove was the same navy Chevrolet Malibu registered to Tyleah Davis at in Dayton, OH; with an Ohio license plate of KEW6676 that she drove for the first evidence purchase.

21. Davis, as identified by the CI and later through the recorded video, gets into the vehicle with the CI and completes the sale of 996 grams of suspected methamphetamine for $4300 of KSP buy money. Davis accepted the payment and was seen by the CI driving north on I-75 toward Dayton, OH. A few minutes after the evidence purchase, it was noted that there was no fentanyl in the packaging. CI1 made a recorded facetime call to 937-260-7650, Herman Buchanan. Buchanan answered the Facetime call and indicated that he did send the fentanyl and that it should be in the package. Buchanan was identified by detectives watching the facetime call, as well as the CI. During the call, Buchanan tells the CI the "brown," in my training and experience referring to the fentanyl, is somewhere on the side of the bag. He then stated, "I put it in there."

22. Buchanan hangs up and says he will call right back. Buchanan calls back a few moments later from the same phone number. Buchanan is, once again, identified on the facetime call by detectives and the CI, and the call is recorded. Buchanan indicates that Davis was returning to meet the CI and that the fentanyl was still in her trunk. Buchanan, speaking about the fentanyl, said, "I know its in there." Buchanan said Davis was about thirty minutes away and tells the CI (in coded communication) to put the methamphetamine up before returning.

23. Davis returns in the same vehicle and pulls beside the CI. She hands him the suspected fentanyl through the window and never exits the vehicle. CI1 confirms that it was

7

Davis who handed him the fentanyl. The methamphetamine and fentanyl appear, in this detective's training and experience, to be consistent with both substances.

24. Approximately at 1558hrs on May 7, 2024, FBI investigator Robert Buzzard was completing surveillance on Herman Buchanan, Jr. based on the active PING locations of his cellular phone in Dayton, OH. Buzzard witnessed the above listed vehicle driven and owned by Tyleah Davis pull into the apartment complex. Davis was identified as the driver by investigators on scene. Buchanan was identified by investigators walking toward Davis's vehicle and briefly making contact with her before the two parted ways.

25. On May 9, 2024, Buchanan began contacting CI1 and asking the CI about picking up the money the CI owed for the suspected fentanyl. Buchanan was still using the same phone number and proposed to the CI meeting the CI himself to pick up the money owed him and sending Davis right behind him with more narcotics.

## **CONCLUSION**

26. Based on my training and experience, and the information set forth in this affidavit, your Affiant believes there is probable cause that between April 23, 2024 and May 9, 2024, in Laurel County, in the Eastern District of Kentucky, and elsewhere, Herman Lee Buchanan, Jr., a.k.a. "Chablingy" conspired to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a schedule II controlled substance, and 40 grams or more of fentanyl, in violation of Title 21 U.S.C. Section 846.

/s/ ATF TFO Jesse Armstrong w.p.b. Hanly A. Ingram
_____
      Jesse Armstrong
                                          ATF Task Force Officer

Attested remotely per Rule 4.1(b)(2)(A) this 9th day of May, 2024.

_____
UNITED STATES MAGISTRATE JUDGE